Let's go to the next case on our schedule, which is Coachman Coachman versus Seattle Auto Management and the Appellants are represented by Mr. Goodfriend Turn the light off. Lift it up for a minute. Lift it up. Don't stop. Just listen. Will the Appellants have Mr. Goodfriend and the Appellees are going to have Mr. Whitehead? Please proceed. Thank you, Judge Gould. May it please the Court, Howard Goodfriend representing the Appellants, Mercedes Benz of Seattle and Al Monjaz. I'd like to reserve six minutes if it's possible. The District Court erred here in two ways. First, in denying Mercedes' motion for a new district, particularly the jury's award of non-economic damages of in excess of $4.6 million, almost $4.7 million on top of $236,000 in economic damages, a ratio of 20 to 1. That was driven by a closing argument in which Coachman asked the jury to take back an alleged $1 million per year for four years of gross profits that Coachman gave Mercedes. This was an improper request for punitive damages. Let me stop you right there because my concern is why there was no objection to that argument that you contend was erroneous. And as a district judge, I'm sensitive to that because had an objection been raised, the District Court would have had the opportunity to deal with it and correct it and prevent us from being here today. And also, you did not even address damages in your closing argument, which I assume was a strategic decision on your part. So I'd appreciate your comments about that. Under a plain error review, if a closing argument calls into serious question the integrity of the proceedings and whether the jury award comports with fundamental fairness, the court can review it in the absence of an objection. Now, as to that standard applied here, there was certainly obvious prejudice in that the jury gave Coachman in excess of $4 million. And it's also, I think— Well, it's erroneous because it was a direct appeal for punitive damages, which had been dismissed and in addition, the District Court specifically ruled right in advance of closing argument that no mention of the defendant's finances could be made except for the very narrow issue of whether an accommodation would oppose an undue hardship. Now, in terms of had a timely objection been made, you're absolutely right. There was no objection. But we know that the District Court viewed this argument as perfectly legitimate. It found nothing wrong with the argument. So, you know, whether or not an objection was made, it probably wouldn't have mattered under these circumstances because the District Court said it was not a punitive damages argument. I'm not convinced by that. District judges don't normally interrupt closing arguments just because they think an error has been made. And in terms of the in limine ruling, it seems to me from reading the transcript, and really this case boils down to basically one page of the transcript of the closing argument, right? Well, the issue of whether it was an appeal to punitive damages, yes, that was certainly, you know, one portion of the closing argument, but was the only portion in which the plaintiff put a $1 million per year price tag on the amount the jury should award. And it was tied his employer. And that it was an improper appeal to punitive damages. Counsel, let me ask you a question for a moment. You've said there should have been a remittiture. Correct. So what is the legal standard that was applicable as to when a remittiture should be given or can be given or should, cannot be given? Under, I think both federal law, and this is a procedural issue for under federal law, but I don't think Washington law is any different. The standard is whether the award is outside the range of substantial evidence, does it shock the conscience or does it appear to have resulted from passion or prejudice? I think the standards are basically the same under Washington law. Let me ask you a follow-up question. If an appellate court wanted to do so, would it be allowed to grant a remittiture? Or would it have to remand and say the district court should consider? If the court views the award as a punitive award, it is empowered to remit it. And I or prejudice, the remedy would be a reversal and a remand to the district court to reduce the award and apply an appropriate remittiture with the option of a new trial. Yes. Well, I certainly understand your argument that the closing argument by plaintiff's counsel was calling for punitive damages. But on the other hand, you could see the district court's perspective, that the argument really related to the indignity suffered by the plaintiff. Counsel specifically said, we thought about the dignity and that how miserable the last four years of his life has been. So given, if we look at this argument and we think that it's susceptible to both a call for punitive damages as well as an appeal to award based on the indignities he suffered, how do we decide that on plain error review? Well, if you just excise out the portion about taking back what Mr. Coachman gave his employer, I think you could reach that conclusion. But you have to read the entirety of the argument. And it was directly an appeal for the jury to taking what it was. That's my question, perhaps inartfully stated. But when you read the whole thing in context, I can understand how it would give rise to your argument that it is an appeal to take back the lost profits gained by the defendant. But I can also see, and it's equally reasonable to construe this argument in context as compensation for the indignities that he suffered and his misery over the last four years. Well, Your Honor, again, I would just... On plain error review, I would think that that would tip towards the plaintiff. Again, I think if you ignore the portion of the argument in which he, in which Mr. Coachman directly tied the amount of his damages to what Mr. Coachman gave his employer, I mean, there's no other way to really perceive that. And I think you have to look at it in the way a reasonable jury would perceive it at the time. Let me also address the issue of the simple, you know, setting aside the closing argument. The amount of these damages should have been remitted because they were simply outside the range of substantial evidence and weigh in excess of any reasonable award given the fact that Mr. Coachman indisputably was unable to work four months after his termination when he went on disability and received Social Security for his remission of his cancer. We've argued, and I think the cases in Washington support the notion that there is... Because the measure of emotional distress damages is untethered to any standards, there has to be some limit or else you run into a due process problem of an arbitrary award. And that's what happened here. The jury was told to simply use its own judgment, that there's no fixed standards, and the award in excess of 19, almost 20 times the amount of the compensatory award far exceeds the amount that Washington courts have deemed reasonable. Now, we're not comparing verdicts across different cases. What we're saying is that under due process, in order to avoid an arbitrary deprivation of property, there has to be some standard. And the standard that Washington courts have used is to look at what is the basis of the award compared to the economic harm. And for that reason, we asked the court to remand for remittitor because this 20 to 1 ratio, given the fact that Mr. Coachman was unable to work again four months later, simply is excessive, shocks the conscience, and as I've indicated, was driven by passion and prejudice, specifically an improper argument. I'll reserve the rest of my time. Thank you. Good morning, Your Honors. May it please the court. My name is Jamal Whitehead, and I'm here today on behalf of Troy Coachman. Your Honors, this was a seven-day jury trial resulting in a unanimous verdict. There was no objection as the jury was in panel. There was no objection to the jury instructions or the contention that the jury was improperly instructed. No objection during opening, closing, rebuttal, as the case was given to the jury. It was only after an adverse verdict was returned that Mercedes took issue and did so in the vehicle of a Rule 59 motion contending that Mr. Coachman had made some type of improper argument and that had led to an excessive verdict. On review of the motion, the trial court found that there was substantial evidence supporting the verdict and that no improper argument had occurred. This court is loathe to disturb the district court's determination about the sufficiency of the evidence and defers to the district court under all but the most narrow circumstances, none of which are applicable here, and certainly none that approach the extraordinary relief sought by Mercedes in the form of new Washington law dictating some hard and fast ratio, mathematic computation between economic and non-economic damages. We talked a lot, and I heard Mr. Goodfriend talk a lot about the argument during closing, but argument is not evidence. Liability is not contested in this case, so I won't talk about how Mercedes fired Mr. Coachman because of his disability, but there was substantial evidence that came out at trial about Mr. Coachman's emotional harms. The jury heard from his family, his friends, his medical personnel, former colleagues, about how Mercedes' conduct cut Mr. Coachman to his core, about how it disrupted his worldview. This was a man that was called Mr. Mercedes because he was so closely identified with the brand and it meant that much to him. He was one of the very best at what he did, but when he had developed cancer and had his vocal cords removed and a vocal prosthetic installed, the company essentially told him that he was a monster, that he was not fit to work with its customers, asking him to wear an ascot to hide his stoma, to hide his voice prosthetic, telling him that he could not speak after he'd worked so hard and so diligently to teach himself how to speak again. The fear and anxiety that resulted from losing his job, which also resulted in him losing his disability benefits, was palpable, and the jury heard about all of this. They'd heard about how, as Mr. Coachman battled cancer initially, that he was hopeful and that work was one of the things that kept him going and motivated him to get better, and that how when his job was taken from him, that a piece of Mr. Coachman was taken as well. The jury heard from Mr. Coachman's medical team and his counselor about how Mr. Coachman's traumatic upbringing made him especially susceptible to the type of betrayal that Mercedes inflicted upon him, and that he was especially susceptible to emotional harm firing from this type of event. So at the end of the day, your honors, the verdict was large because the harm they inflicted was large, and telling the jury about these harms isn't an appeal to passion or prejudice, but just a recounting of the facts of the case. So, you know, we're talking about, you said, Judge Personnel, one page in a 30-page closing argument. It really boils down to 12 lines, and when you look at this argument in context, we're talking about RP 1199, it's important to read RP 1198, 97, 96, so on and so forth, putting this argument into context, and it's clear that this is no appeal for punitive damages. There's no call to punish Mercedes for its conduct, to get back at Mercedes for what it had done to Mr. Coachman. There's no call to hurt Mercedes, to deter it from doing the same thing to other employees. This is not a call for disgorgement. There's no suggestion that Mercedes was wrong from retaining the benefit of Mr. Coachman's work, or that it would be unlawful for the company to keep it under the circumstances. I mean, really what we're talking about was a framework, an argument suggested by counsel for the jury to think about something that is difficult to calculate, right? That's acknowledged on the face of the jury instructions that Mercedes did not object to. There is no fixed standard for calculating emotional distress damages. Counsel, if I may ask you a question, Mr. Whiting. In this kind of practice, of such a claim for emotional distress damages, or non-economic damages, is there a general practice or custom as to how an advocate would normally prove that? Your Honor, it's through the evidence. And that's why I began with sort of the recitation of the facts that came out. It's not that the jury is completely untethered. They're instructed to use their judgment in view of the evidence adduced at trial to come up with a number that was fair. And in this case, the jury was instructed to consider nine different aspects of emotional harm. And that's exactly what they did. At the conclusion of trial, Mr. Coachman valued his damages at $9 million. Nine million plus, actually. That was the number that was put to the jury. The jury came back with a number that was half that amount, which suggests that the jury disregarded the argument of counsel and that it went about its work in a serious and thoughtful manner and reached a number that was based on the evidence that came out at trial. Thank you. So this notion that economic damages and non-economic damages must come in some set ratio, simply there is no case that holds that solely on the basis of an economic ratio that remitted or should be granted. And Mercedes has not cited a case. No case exists and no case should. Because in a case like this, a discrimination case, where all acknowledge that there's an opportunity for a disparity between non-economic and economic damages, it would unfairly penalize those low-wage earners or people like Mr. Coachman, who after several months after he was fired was rendered unable to work. So to limit the recovery of his emotional distress damages simply because he could no longer earn, it would be to do him an injustice. Or in the case of, say, for example, severe or egregious sexual harassment, where there is no wage loss, to tell that person that they're not entitled or that their emotional distress damages are cabined, irrespective of the evidence of their emotional harm, would be unfair. And the rule that Mercedes is advocating for would fall especially hard on people of color, women, disabled people, people that historically earned less in terms of the majority workforce. So, Your Honors, at the end of the day, what we have is a jury that was properly instructed, that heard substantial evidence of Mr. Coachman's emotional harm. And, Judge Presnell, as you pointed out, that all went unrebutted by Mercedes. They put on no counter-evidence. There was no counter-argument. There was no counter-suggestion to the jury about how it might go about its work of calculating the damages, the absence of which was so conspicuous that the trial judge even noted in his order denying remitter, denying the new trial, that Mercedes made a strategic choice not to argue damages. In this instance, Mercedes made its bet and shouldn't be heard to complain that the bet is lumpy. So what we have is a trial judge denying a motion for remitter, and this court, the standard being abuse of discretion and looking for a clear abuse of discretion, meaning the absolute absence of evidence or a wholly implausible or improbable result. That just simply is not the case here. For that reason, Your Honors, we ask that you affirm. Thank you very much. Well, the argument is that there's basically no appellate review because the jury is told to use its own judgment and that there are no fixed standards. This court is powerless to determine whether any number is too much. Well, what is the fixed status or ratio? I mean, how are we supposed to draw a line here? Well, I think you have to look at several factors, only one of which is the ratio. I think you also have to look at whether a person experienced months or years of discriminatory treatment, such as the case of sexual harassment that you just heard about. I think that would be a proper factor. I think also in a case where there is an allegation and there was demonstrably an appeal to take back what the plaintiff gave the defendant, whether there were any improper influences that could have influenced the jury. I think those are the factors that you look at to determine whether it's too much. And in this case, I submit we have all three. There has to be some standards because we know from the punitive damages jurisprudence that in those situations the jury is given far more direction than in the case of emotional distress. There needs to be some objective criteria by which an appellate court can engage in review to determine whether or not an award is arbitrary or irrational. And in the absence of that, what you get is no number is too big because it could always be justified by an appeal about how much the plaintiff suffered. Counsel, the types of ratios that the Supreme Court has set in punitive damages cases is a question of federal law on due process claims for punitives. But we're dealing with Washington law here. So what is there, what Washington case can you, would you advocate, suggest that the same kind of regime should be set for assessing damages for non-NIC given for non-economic claims like mental suffering? Well, I would concede that the Washington Supreme Court has not endorsed a specific ratio comparison. But, I mean, there's no specific holding that says that. But if you look at the cases where they review awards, and I'm talking about the Hill case, which is a court of appeals case, but even the Bunch case, which reversed a remitter, the basis for the court's determination that the award was not excessive was specifically looking at the ratio of how much was given compared to the economic harm. And that's true equally in non-discrimination cases and cases involving serious bodily injury. That is the only standard that really comes across objectively from the cases. And if you're going to prevent an irrational and arbitrary deprivation, you have to tether it to something. And we submit that that's what the Washington courts have looked at. So with that, I'll concede the rest of my time unless the court has any additional questions. I guess I have a follow-up question on that. Just if our court isn't empowered to set a ratio for Washington law, is there a question that should be certified to the Washington State Supreme Court as to whether there should be such a test as you advocate on non-economic damages? In terms of the excessiveness of an award under Gasparini, that would be a question of state law that would go to the state's highest court. In terms of due process, which is a federal issue, that is a question that this court is perfectly empowered and capable of deciding. And the arbitrariness and irrationality of a standard list review, I think, is a matter of federal due process. Dave, thank you. Thank you, Your Honor. The case has been very well argued by Mr. Goodfriend and by Mr. Whitehead, and we appreciate the advocacy. And since I used to practice in Seattle decades ago, I always appreciate when I see excellent advocates from Seattle. So thank you. I can't thank you for traveling so far, but I do thank you for your excellent arguments. So that case shall be submitted. Then we'll proceed.
judges: Gould, Nguyen, Presnell